## Shryock *et al.* *versus* Basehore.

82　159
177　592

1. S. and R., who were assignees of an insolvent state bank (The Farmers' and Mechanics'), by virtue of the provisions of the Act of 16th April 1850, brought this action against B. as the maker of a note to the bank: *Held*, (reversing the court below) that B. could not be permitted to set up as a defence to the note that the assignment was void as being transgressive of the Bankrupt Act of 1867 : *Held*, that this was substantially an action by the bank against its debtor, and although it ought to have been brought by the assignees in the name of the bank, still this was amendable in the Supreme Court.

2. Before suit brought, B. obtained from the First National Bank a dishonored draft drawn in favor of G., cashier of that bank, by the Farmers' and Mechanics' Bank for $2620.94, giving therefor his own note for $2543.75, upon the back of which was written an agreement that the note should be good for only such amount as B. should realize upon the draft, and that any amount realized upon the draft in excess of the amount of the note should belong to the First National Bank. The cashier, G., had no authority to transfer the draft to B. upon these terms : *Held*, that it was not the subject of a set-off by B., (1) because the transfer of the draft to B. was conditional and not absolute, and (2) because G.'s unauthorized transfer gave B. no title to the draft.

May 22d and 23d 1876. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS, J., absent.

Error to the Court of Common Pleas of *Franklin county :* Of May Term 1876, No. 62.

This was assumpsit by Samuel S. Shryock and John P. Rhoads, assignees of the Farmers' and Mechanics' Bank of Shippensburg, against Abram S. Basehore, on a promissory note. The *narr.* contained a count on the note, and common counts. Defendant pleaded payment, set-off, and, at the trial, entered a further plea that the assignment to the plaintiffs by the directors of the Farmers' and Mechanics' Bank of Shippensburg was transgressive of the Act of Congress of the 2d of March 1867, known as the Bankrupt Law, and is therefore void. The defendant gave notice, under the plea of set-off, of a bill of exchange drawn on the Union Banking Company, a copy of which appears below in the special verdict, and asked to recover the difference from the plaintiffs.

The jury found substantially the following special verdict:—

" The Farmers' and Mechanics' Bank of Shippensburg was incorporated by act of the legislature of Pennsylvania, of 11th April 1862, and was therein made subject to the provisions and restrictions of the several acts of assembly regulating banks, and to such further provisions and restrictions as the legislature should think proper to enact for the further regulation of banks and saving institutions."

On the 5th day of February 1875, the bank was the lawful holder of a promissory note for $2500, made by Abram S. Basehore, the defendant, of which the following is a copy :—

[Shryock *v.* Basehore.]

" $2500.                    Shippensburg, Pa., Feb. 5th 1875.

Fifty-two days after date, I promise to pay to the order of Emanuel Basehore, at the Farmers' and Mechanics' Bank of Shippensburg, twenty-five hundred dollars, without defalcation, for value received.                                ABRAM S. BASEHORE.

Credit the drawer.   EMANUEL BASEHORE.

Endorsed : EMANUEL BASEHORE."

This note was not paid at maturity.

On April 29th 1875, a petition was presented to the court of Common Pleas of Cumberland county, praying a citation to the president and cashier of the said bank, to . show cause why an assignment of the assets of the said bank should not be made for the benefit of the creditors thereof, in accordance with the provisions of the 27th section of an Act of Assembly, approved the 16th day of April 1850, entitled "An Act to regulate Banks."

A citation was awarded, and on the 3d day of May 1875, the court ordered that the directors of the bank should make and execute, under the corporate seal, a general assignment of all the estate, real and personal, of the bank, to such persons as they should select, subject to the approval of said court.

On May 4th 1875, the president and directors of the bank, in obedience to this decree, made and executed to John P. Rhoads and Samuel S. Shryock, the plaintiffs, a deed of assignment of all the estate of the bank, *in trust* for creditors.   This assignment was approved by the court, and was duly recorded, and the assignees were properly qualified to act as trustees thereunder.   The bank was badly insolvent at the time and the assignees had notice thereof.

Prior to the assignment, on April 1st 1875, a draft was issued by the Farmers' and Mechanics' Bank of Shippensburg in favor of J. D. Geesaman, cashier of the First National Bank of Shippensburg, for $2620.94, on the Union Banking Company of Philadelphia.   This draft was on the same day delivered to the First National Bank, and by it endorsed and sent to Philapelphia for collection, and was on the 2d of April presented for payment and protested, and on the 3d of April returned to the First National Bank, and by it placed in the hands of an attorney for collection. The following is a copy of it :—

"Farmers' and Mechanics' Bank of Shippensburg.

"$2620.94.                    Shippensburg, April 1st 1875.

"Pay to the order of. J. D. Geesaman, Esq., cashier, twenty-six hundred twenty and $\frac{94}{100}$ dollars.   J. HIRAM HUBLEY, Cashier.

"To Union Banking Company, Philadelphia.

Endorsed :

"J. D. GEESAMAN."

[Shryock v. Basehore.]

The said J. D. Geesaman, at the request of the attorney for the First National Bank, on the 14th day of July 1875, endorsed the said draft of $2620.94, and delivered it to Basehore, and then received from Basehore, in lieu and consideration of this draft, a promissory note of the same date, made by Basehore and by one Emanuel Basehore, as follows:—

"$2543\frac{75}{100}$.　　　　　Shippensburg, Pa., July 14th 1875.

"Ninety days after date, we or either of us, promise to pay to the order of J. D. Geesaman, cashier, at the Frst National Bank of Shippensburg, twenty-five hundred and forty-three $\frac{75}{100}$ dollars, without defalcation, for value received, together with five per cent. attorneys' fee for collection of same, if not paid when due.

　　　　　　　　　　ABRAM S. BASEHORE.
　　　　　　　　　　EMANUEL BASEHORE."

At the time of the making of the last-mentioned note of 16th July 1875, there was written on the back of it the following:—

"This note is given in purchase of a certain draft held by the First National Bank of Shippensburg, for $2620\frac{94}{100}$, drawn by the Farmers' and Mechanics' Bank of Shippensburg upon the Union Banking Company of Philadelphia, date 1st of April 1875, and protested, and is good only for so much as the makers hereof, or either of them, shall realize upon said draft either by collection, payment, or credit obtained upon obligation. If any excess shall be realized upon said draft over and above the amount of the note, said excess to belong to the said National Bank."

The consideration given by Basehore for this draft was the note of the 14th July 1875, for $2543.75, with the memorandum thereon, and this endorsement was on the note when it was taken by the First National Bank for the draft. This draft was not received by Basehore upon any other terms than those which were written on the back of the note of 14th July 1875, nor did the First National Bank hold the note upon any other terms or agreement.

Geesaman had a general authority to endorse the notes and drafts of the First National Bank aforesaid; he had no authority, apart from his general authority, to endorse this draft to Abram S. Basehore; he did not so endorse the draft by the express direction of the board of directors; it was endorsed by the direction of the president of the bank; no minute was made of the transaction, nor was any formal action of the board taken theron. The board were informed by the cashier, within a week or two, of the transfer of the draft and of the taking of the said note for it, and acquiesced therein; but the board were not informed by the cashier of the writing on the back of the note; neither the president nor directors ever gave Geesaman any express authority or directions to transfer the draft to Basehore upon any terms or conditions other than the note of Basehore for $2500. The president authorized

1 NORRIS—11

the transfer, if Basehore would give his note for $2500. The president of the board was present when the note was written and given, and was cognizant of the whole transaction, and approved of it, and directed the endorsement to be made. The note of 14th July 1875 was held by the First National Bank up to the time of the trial.

The draft so endorsed to and held by Basehore was tendered by him to the assignees in payment of the note in suit, on the 14th day of July 1875, before this suit was brought, and was by them refused, and was also tendered to the plaintiffs on the trial of the case.

The defendant, about the middle of November 1875, after this suit was brought, which was on the 19th day of August 1875, paid $800 into the First National Bank, and directed that sum to be appropriated to the note of 14th July 1875. The clerk of the bank said he would lay it aside until the cashier came in. The direction given was not revoked by Basehore, but the money was not appropriated by the bank to the note, but found to the credit of Basehore, in his account, and awaited his directions.

The defendant, at the time of the transfer of the said draft to him, had knowledge of the assignment by the bank to the assignees made on the 4th of May 1875, and that the assignees had accepted the trust.

Upon these facts the jury were ignorant how they ought to find a verdict. If, upon the whole matter, the court should be of opinion with the plaintiffs, then they found for the plaintiffs in $2607.72; otherwise they found for the defendant."

The court below (Rowe, P. J.), in entering judgment on this verdict for the defendant, was of opinion that the verdict raised two questions, first as to the validity of the assignment to the plaintiffs, and secondly as to the set-off. As to the former question the learned judge, in an elaborate discussion, held that the bankrupt act made the deed of assignment to the plaintiffs void. As to the latter point, the learned judge said:—

"And now as to the question of set-off, it has been contended that the draft for $2600, drawn by the Farmers' and Mechanics' Bank of Shippensburg, on Philadelphia, in favor of the First National Bank, and endorsed to the defendant after maturity, is not included in the word 'obligations' as used in the law, and is not such a note or obligation as the assignees must accept in payment of debts due to the bank. This contention is not supported by authority, and it seems clear that a draft drawn by a bank is one of its 'obligations.'

"The fact that the draft was taken by the defendant after the assignment by the bank to the plaintiffs, and with knowledge of it, is of no consequence, as ruled in Bank *v.* Spangler, 32 Penn. St. 474. The cashier of the First National Bank had authority, as

[Shryock *v.* Basehore.]

such, to make the endorsement and transfer the draft: Matthews *v.* Massachusetts National Bank, 14 Am. Law Reg. 153; Bank *v.* Reed, 1 W. & S. 106; Bank *v.* Typer, 3 Id. 376; Housum *v.* Rodgers, 4 Wright 190. To the objection that the writing on the back of the note given for the draft shows that the note was not to be paid by defendant except to the extent to which he should be able to make use of the draft, and that therefore the transfer of the draft to the defendant was conditional, Mr. Stewart has answered that it is not the transfer of the draft which is conditional. That is absolute. What is conditional is the payment of the note which defendant gave for the draft. It will not again become the property of the First National Bank in any event. That is a satisfactory answer. The intention of the law is clear that the notes and obligations of the bank, and the checks of its depositors shall be as good as gold in payment of its debts. The draft is such an obligation of the bank, in the defendant's possession honestly and for all purposes, and he may use it in payment or as a set-off."

The plaintiffs took this writ of error, and assigned for error the entering of judgment for the defendant upon the special verdict.

*F. M. Kimmel, George W. Brewer, Hastings Gehr* and *W. K. Shryock,* for plaintiffs in error, made an elaborate and learned argument upon the question of the validity of the assignment to the plaintiffs, and also upon the question as to whether the draft offered in evidence under the plea of set-off was an obligation of the Farmers' and Mechanics' Bank, under section 27 of the Act of 16th April 1850. These points were not passed upon by this court, and the arguments need not be given here.

They further argued that the defendant's title to the draft was not sufficient, because he took after notice of the assignment, and also because he held only a conditional title. As to the latter point, a defendant must have a set-off in the same way as if he had brought an action upon it: Magraw *v.* Pettibone, 10 Mich. 550; Kimble *v.* Glover, 13 Rich. (Law) 191; Straus *v.* Eagle Insurance Co., 5 Ohio St. 59; In re Brett, 13 N. B. Reg. 43; Thorp *v.* Wegefarth, 6 P. F. Smith 82; Ryder *v.* Johnson, 8 Harris 190; Singerly *v.* Swayne's Adm'rs, 9 Casey 102; Philips *v.* Bank of Lewistown, 6 Harris 394; Northampton Bank *v.* Balliet, 8 W. & S. 311; Selfridge *v.* Northampton Bank, Id. 320; Bosler's Adm'rs *v.* Exchange Bank, 4 Barr 32; Bartholomew's Adm'r *v.* Bartholomew, 14 Wright 194; Pennell *v.* Grubb, 1 Harris 552; Smith *v.* Ewer, 10 Id. 116; Spears *v.* Sterrett, 5 Casey 192; Diven *v.* Phelps, 34 Barb. 224; Huxton *v.* Bishop, 3 Wend. 13.

*T. B. Kennedy* and *John Stewart,* for defendant in error, did not present a paper-book.

Mr. Justice PAXSON delivered the opinion of the court, October 9th 1876.

A vast amount of learning has been wasted in this case. If the questions which were so elaborately argued here and in the court below were legitimately before us, we would certainly feel that the case was not free from difficulty. But Basehore, the defendant, has no standing which entitles him to raise them. He is the debtor of the bank, and this suit was brought against him to recover the amount of such indebtedness. He defends upon the ground that the assignment by the bank was in contravention of the Bankrupt Law. What is that to him? What has he to do with the distribution of the fund? That question concerns only the creditors of the bank, and can only be raised by them. It is no answer to this to say that the assignment being void, no title to the note sued upon passed to the assignees. This is substantially a suit by the bank against its debtor. If it were so in form it is not pretended that this defence could be set up. That it was brought by the assignees does not matter. It is true it should have been brought by the assignees in the name of the bank. But this is the merest technicality. It was amendable of right in the court below, and could be amended here. We may regard that as done which ought to have been done, and consider the record as amended for the purposes of this case. There is abundant authority for this. Palmer *v.* Waite, 1 Weekly Notes 363, and cases there cited. Nor can this prejudice the defendant. The judgment against him is a full protection. While the defence has developed a solicitude for the rights of the creditors of the bank that is certainly commendable, we are inclined to the opinion that if the defendant will pay his debt to the bank, some means will be found by which the rights of creditors can be ascertained and adjusted. Whether the fund shall be distributed according to the terms of the bankrupt law, or in accordance with our Act of 1850, under which the assignment was made, are questions which do not concern this defendant.

Any other conclusion would lead to difficulty. The time has gone by for proceedings in bankruptcy. There is no assignee in bankruptcy, nor can there be under the admitted facts in the case. If the bank, through its assignees, cannot sue for this debt, it cannot be recovered at all.

The draft in favor of Geesaman, cashier, was clearly not the subject of set-off in this suit. The defendant had no title to it. The endorsement on the back of the note of Abram and Emanuel Basehore shows that there was not an absolute transfer of the draft. The excess of the draft over the note, if recovered, was to be returned to the First National Bank of Shippensburg. But the more serious difficulty is that the draft was given to the defendant without authority. It is found by the special verdict that "neither the president nor directors ever gave the said J. D. Geesaman any

[Shryock v. Basehore.]

express authority to transfer the draft to Basehore upon any terms or conditions other than the note of Basehore for $2500." It needs no argument to show that a cashier cannot part with the assets of a bank without its authority. Nor can such authority be implied in the face of the finding of the jury. As the defendant had no title to the draft, it could not be set off either under our Defalcation Act, or the Act of 16th April 1850, under which the assignment of the bank was made.

> The judgment is reversed, and judgment is now entered here upon the verdict in favor of the plaintiffs for the sum of $2607.72, with interest from the 18th day of January, A. D. 1876.